### BURNETT v. ANDERSON. (No. 8904.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 19, 1918. Rehearing Denied Nov. 23, 1918.)

1. DAMAGES ☞132(7)—PERSONAL INJURIES —EXCESSIVE DAMAGES.

Although plaintiff, when he received permanent injuries to his foot and other injuries, was 60 years old, where he was able to and did superintend a large business and injuries had largely impaired his ability to do so, besides causing him suffering and expense, a verdict for $10,000 will not be held excessive.

2. APPEAL AND ERROR ☞1013—AMOUNT OF RECOVERY—PROVINCE OF JURY. ·

The determination of the amount of damages in personal injury cases is committed to the jury in a very large measure, and its decision will not be reversed, though damages are greater than appellate court would have given.

3. APPEAL AND ERROR ☞1050(1) — ADMISSION OF INCOMPETENT TESTIMONY—HARMLESS ERROR.

In an action for injuries to pedestrian due to automobile accident, that a witness was asked the whereabouts of some X-ray pictures of plaintiff's foot, and replied, "I gave them to the insurance man," *held* not to have had any appreciable influence in enlarging the verdict or in arousing any degree of prejudice.

4. MUNICIPAL CORPORATIONS ☞706(8) — COLLISION IN STREET—ACTION—INSTRUCTION.

In action for personal injuries sustained by plaintiff pedestrian when run down by an automobile, driven by defendant's chauffeur, *held*, that court's main charge was not subject to objection that it submitted issue of discovered peril.

5. TRIAL ☞252(8) — INSTRUCTIONS — EVIDENCE.

In action for injuries sustained by pedestrian when run down by an automobile, giving of a special requested charge on discovered peril *held* not erroneous as against objection that there was no evidence that chauffeur saw plaintiff.

6. EVIDENCE ☞75 — FAILURE TO PRODUCE EVIDENCE—PRESUMPTIONS.

Where a party fails to present evidence within his power to produce, the presumption is that the evidence, if offered, would be unfavorable.

7. APPEAL AND ERROR ☞1051(1) — ADMISSION OF TESTIMONY—HARMLESS ERROR.

Where it was plain from the evidence that defendant's chauffeur was exceeding speed limit, permitting a witness to testify that chauffeur had stated shortly after accident that he was driving a little fast, and that the passenger had stated that she had requested chauffeur not to drive so fast, was without prejudice to defendant.

8. TRIAL ☞252(8) — INSTRUCTIONS — EVIDENCE.

In action for injuries sustained by plaintiff pedestrian when run down by an automobile, *held*, under the evidence, that court did not err in refusing to give special charge submitting issue whether chauffeur was an employé or servant of defendant.

9. MUNICIPAL CORPORATIONS ☞706(7)—INJURIES TO PEDESTRIAN—CONTRIBUTORY NEGLIGENCE.

In action for injuries sustained by plaintiff pedestrian when run down by an automobile, driven by defendant's chauffeur, *held*, that court did not err in denying peremptory instruction for defendant who pleaded contributory negligence as a defense.

Error from District Court, Tarrant County; Bruce Young, Judge.

Action by A. J. Anderson against Tom L. Burnett. Judgment for plaintiff, and defendant brings error. Affirmed.

Samuels & Brown and McLean, Scott & McLean, all of Ft. Worth, for plaintiff in error.

Slay, Simon & Smith, Chas. T. Rowland, and Theodore Mack, all of Ft. Worth, for defendant in error.

CONNER, C. J. This appeal is from a judgment of $10,000 in appellee's favor as damages for personal injuries received in an automobile accident. The record discloses that on April 27, 1916, a chauffeur in a large, high-powered automobile, with a daughter of plaintiff in error, was rapidly driving along Jennings avenue in the city of Ft. Worth, and that near the point where said avenue connects with Throckmorton street in said city said car ran over and seriously injured defendant in error, who at the time was attempting to cross the street. The defendant in error, in his petition for a recovery, alleged, among other grounds of negligence, that the driver of the automobile was proceeding at an unusual rate of speed in violation of both a state statute and a city ordinance on the subject. In answer, this was denied, and it was further alleged that

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the plaintiff in the suit was guilty of contributory negligence. The trial, however, resulted in a judgment in defendant in error's favor as stated.

[1] Plaintiff in error, on this appeal from the judgment mentioned, presents as of first importance the contention that the verdict and judgment is excessive, but, after a careful consideration of the evidence, we have been unable to so determine. There was evidence tending to show that Anderson was very violently thrown upon the paved street; that the car ran over and crushed the arch of his left foot and broke or shattered two or more of the bones in the arch; that he received blows or injuries on the side of his spine that resulted in a loss of sensation of the right leg for a number of days, and a curvature of the neck not yet under control; that the use of his right arm has become greatly impaired. The evidence is further to the effect that the injury to the foot caused very great and long-continued pain, Anderson testifying that it became greatly swollen and discolored; that for nearly three weeks he was confined to his bed, during all of which time the pain and agony was intense; and it was some four months before he was able to do more than "hobble" around on his crutches; that at the time of the trial, about one year after the injury, he was yet unable to walk with his former ease; that he could not walk without pain more than five or six blocks in town where the pavements were smooth without sitting down to rest; that where the ground was uneven and rough he was unable to walk that far without pain; that, when his foot rested upon a pebble or protruding substance, it gave him pain; that in walking he was compelled to "drag his foot and keep it flat"; that he was unable to do much work which would necessitate his moving around or being active on his feet; that he was unable to work in his store as he did before because of his inability to stand upon his feet.

The evidence further tends to show that he conducted a large business in the city with some 37 employés engaged by him in conducting it; that such business had been supervised and managed by him continuously to the time of his injury, save that some seven months prior to the injury he had acquired a suburban residence on Lake Worth, some 12 miles from the city, at which place during said months he had spent much of his time in improving it, etc., but nevertheless going to the store once or twice a week to superintend the business; that since his injury he had been required to hire one of his former employés as general manager of the store at an advance in salary of $50 per month; that he had incurred an expense of about $100 in the way of doctors' bills for medical treatment, exclusive of his drug bill.

[2] There is no mathematical standard by which we can measure damages for injuries of the character indicated by the foregoing statement of what the evidence in this case tends to prove. The law merely declares that such damages shall be limited to just compensation, and the determination of that question is committed to the jury in a very large measure. The rule by which an appellate tribunal is to be guided, when called upon to review the verdict of the jury assessing damages, is thus tersely stated in the case of H. & T. C. Ry. Co. v. McNamara, 59 Tex. 255:

"It is only when the damages are palpably and manifestly excessive that the verdict will be set aside by the appellate court. A large amount of discretion is necessarily left to the jury in all such cases, and the court will not reverse even if the damages allowed are much greater than the court would have given under the proof."

To the same general effect are the following authorities: H. & G. N. Ry. Co. v. Randall, 50 Tex. 254; Lumber Co. v. Denham, 29 S. W. 554; C., R. I. & T. Ry. Co. v. Jones, 39 Tex. Civ. App. 480, 88 S. W. 445; C., R. I. & G. Ry. Co. v. Swann, 60 Tex. Civ. App. 427, 127 S. W. 1164.

[3] While defendant in error was 60 years of age at the date of his injury, he nevertheless was, as the evidence tends to show, a man in full vigor of life; was able to do, and did, superintend a large business; that the ability to do this has been largely impaired; that he suffered for weeks very great pain; that his injuries are permanent; and we find nothing in the evidence that to our minds induces the belief that the jury in assessing the damages in this case were actuated by passion or prejudice. The only circumstance relied upon by the plaintiff in error is the fact that, in the examination of one of the witnesses, he was asked the whereabouts of some X-ray pictures that had been taken of defendant in error's foot, and he gave the following reply: "I think I gave them to the insurance man." But we attach no particular weight to this incidental answer of the witness, no objection was made to it at the time, no further inquiry was made, and therefrom it is just as reasonable to infer that the insurance agent who received the X-ray pictures was one who had insured Anderson against the consequences of an accident, as to infer that he was one who had insured plaintiff in error against the consequences of damages. We are unwilling to assume that the answer of the witness quoted had any appreciable influence in enlarging the verdict in this case or in arousing any degree of passion or prejudice. On the whole, we think the assignment raising the question of excessiveness in the verdict must be overruled.

The following paragraph of the court's charge is assigned as error:

"Bearing in mind the foregoing definitions and instructions and those hereinafter given

you, if you find and believe from the evidence that on or about the 27th day of April, 1916, while plaintiff was walking across the public street in the city of Ft. Worth near where Jennings avenue and Throckmorton street come together, an automobile belonging to the defendant, Tom L. Burnett, being driven by his chauffeur, agent, employé, or representative, at a greater rate of speed than twelve (12) miles an hour, struck plaintiff herein; or if you further find that the driver operating said car at said time and place suddenly turned said car toward the plaintiff and failed to use ordinary care to so guide and direct the movements of same as to avoid striking plaintiff; or if you find that the driver of said car, in approaching the place where plaintiff was injured, failed to use ordinary care to keep a proper lookout on said street in order to discover whether pedestrians or other persons were crossing or about to cross the same; or if you find that the driver of said car, just prior to said injury, either saw or by the exercise of ordinary care could have seen plaintiff, and that plaintiff was in a dangerous situation, in time to have avoided the injury to him by the use of the means at hand, and that, after seeing plaintiff and the condition and position in which he then was, said driver failed to use the reasonable means at his command to avoid injuring the plaintiff; and if you further find that such act or acts or omissions, or either of them, if any, on the part of the agent, employé, or representative of the defendant driving said car at said time and place, were 'negligence,' as that term has been heretofore defined; and you further find such negligence, if any, was the proximate cause of plaintiff's alleged injuries, if any, and you do not find for the defendant under other instructions herein given you—then your verdict will be for the plaintiff and against the defendant."

[4] The paragraph of the charge quoted is made the basis of the contention that the court erred in submitting the issue of "discovered peril," but we do not so interpret the charge. It merely required a finding of one or more of the acts of negligence alleged, and a determination that such act or acts constituted negligence which proximately caused the plaintiff's injury. It is true that the paragraph embodied the statement emphasized before us that if the driver of the car, just prior to the injury, "either saw or by the exercise of ordinary care could have seen plaintiff and the plaintiff was in a dangerous situation, etc.," the finding should be for the plaintiff. While, to constitute discovered peril that would relieve the plaintiff from the consequences of contributory negligence on his part, it would be necessary, as now contended, to show that the driver actually discovered plaintiff's perilous position, if any, and not merely that he was negligent in a failure to so discover such peril, yet it is manifest, from a scrutiny of the charge, that the court in the paragraph quoted was not attempting to submit the issue of discovered peril. By the charge the failure to exercise due care in discovering the plaintiff's perilous situation, and the failure to use all available means to avoid injuring him if the driver actually saw or discovered the plaintiff in time to have avoided the injury, are alike made mere elements of the plaintiff's case on the general allegations or issues of negligence. In both instances a finding of negligence, and that such negligence was the proximate cause of plaintiff's injury, was required in order to find for him, and under the charge, even though the finding of the jury should be in favor of the plaintiff on both of those special issues of negligence, the general finding for plaintiff and assessment of damages was conditioned on a further finding that the defensive issues, including the issue of contributory negligence, were all determined adversely to the defendant. This is rendered more certain by reference to other paragraphs of the court's charge, for instance, in the fifth paragraph, after defining the duty of the plaintiff to exercise ordinary care for his own safety, the jury were instructed that if they believed from the evidence that at the time plaintiff was injured he was guilty of contributory negligence, which proximately caused or contributed to his injury, the finding should be for the defendant. No escape from the consequences of the plaintiff's contributory negligence, if any, was presented in the court's main charge.

[5] It was only in a special charge requested by the plaintiff that the issue of discovered peril was submitted at all, and this special charge is not criticized because of a failure to require actual discovery of plaintiff's perilous position. The only objections to the special charge referred to now urged are: First, that it does not affirmatively appear that the driver of the car actually realized and saw that the plaintiff was in a dangerous position and failed to exercise the means at hand; and, second, that there was no proof of the distance that would have been required to stop the car, and no proof of the condition of the brakes, and no proof of how the chauffeur could have avoided the collision. Defendant in error, however, testified to the effect that the car approached him at about the speed of 25 miles per hour; that when within a short distance of the curb he noticed the car some 15 feet away from him running very near the curb; that in order to avoid it, as he thought, he stepped back, and as he did so the driver swerved his car toward him; that he again stepped forward toward the curb, whereupon the driver again swerved the car in his direction and ran over him. The evidence, as we think, clearly indicates that the driver saw Anderson and that he was probably endeavoring to avoid the collision. Otherwise, we would have to give color to the imputation of the plaintiff that the driver was trying to run him down. The sudden decisive swerve given the car by the chauffeur is explainable upon no other theory than that he actually saw plaintiff. The evidence seems strongly to show that at

the rate of speed the chauffeur was driving, and from the position in which Anderson was when confronted with the machine, no application of the brakes could have saved him; at least, there is nothing in the evidence indicating that the final collision was the result of any defect of the car or brakes. No explanation of this character was offered in behalf of the plaintiff in error here, notwithstanding the fact, as was admitted on the submission of this cause, the chauffeur was present upon the trial and was not offered as a witness. Presumably both the chauffeur and the plaintiff in error's daughter were available as witnesses, and could have testified to a moderate rate of speed, or to any other fact or circumstance indicating a want of negligence upon the chauffeur's part.

[6] It is a familiar principle that, where a party fails to present evidence within his power to produce, the presumption is that the evidence, if offered, would be unfavorable. While it seems to us the case was complete without resort to the issue of discovered peril, nevertheles we find no reversible error in the submission of the issue. We certainly fail to find any substantial merit in the particular objections urged to the charge submitting it.

[7] There are some minor questions which we should perhaps briefly mention. One is an objection to the evidence of the witness Tyra, which was to the effecc that the driver of the car stated "that he was driving a little fast," etc., but it appears that the conversation in which the chauffeur made this statement was almost immediately after the accident; that Miss Burnett stated at about the same time that she, previous to the accident, had requested the driver "not to run so fast." No objection was made to this statement of Miss Burnett. Moreover, a number of witnesses testified to the rapid driving of the car. This fact seems hardly to be disputed; the evidence makes plain, as it seems to us, that the driver at the time was largely exceeding the speed limit, and the statement of the driver to Tyra, objected to, could, in no event, create in the minds of the jury an unfavorable or prejudicial influence on the subject of the car's speed.

[8] There is a further objection that the court erred in refusing to give a special charge to the effect that, if the jury found that the person driving the car was not at the time an employé or servant of the defendant, they should find for him. The only ground for a contention that this issue was raised is that plaintiff in error testified that the driver of the car was paid by his father. Plaintiff in error admitted, however, that the car was his; that he, with his daughter and his father, constituted the family; that his car and one of his father's were used indiscriminately, as also was the driver; that

the driver and daughter was at the time on their way to plaintiff in error's office for the purpose of bringing them home to lunch, so that on the whole there seems to be little or no dispute but that the driver, at the time and place in question, was such servant or employé of the plaintiff in error as to render plaintiff in error liable for the consequences of the driver's negligence. It is altogether improbable, as we think, that, had the issue been submitted, any determination thereof on the part of the jury in plaintiff in error's favor could reasonably have been made.

[9] There is a further contention that the court should have given a peremptory instruction for the plaintiff in error; but what we have already said, we think, makes it sufficiently plain that there was no error in refusing this instruction.

We conclude that all assignments of error should be overruled and the judgment affirmed.

BUCK, J., concurs in the final conclusions reached, without concurring in some of the language used.

